DECISION
The petitioner, a convicted sex offender, was classified by the Sex Offender Review Board as a level 2 risk to re-offend under 11-37.1 of the Rhode Island General Laws known as the Sex Offender and Community Notification Act. On receipt of notification, he filed a timely objection to his risk level and sought a hearing to review the level of notification. A hearing was conducted by the Court in accordance with GL 11-37.1-16 of the Act.
 Facts and Travel
On October 18, 1999, the petitioner entered a plea of Nolo to two charges of Second Degree Sexual Assault, one charge of Third Degree Sexual Assault and one charge of Second Degree Child Molestation. He was sentenced to twenty years with eight years to serve on the Child Molestation charge, fifteen years, eight years to serve on the two Second Degree Sexual Assault charges and five years to serve on the Third Degree Sexual Assault.
The petitioner previously had been convicted of two charges of Assault with a Dangerous Weapon which occurred on November 15, 1993 and received a five year sentence, which was suspended. He also had a separate charge in 1993 of Assault with a Dangerous Weapon and Possession of a Firearm.
The sexual assault and child molestation involved a thirteen-year-old niece of the petitioner and occurred on numerous occasions over a long period of time.
Based upon his conviction and the nature of the offenses, the petitioner was required to register as a sex offender in the city or town in which he resided and in addition be subject to community notification upon his release from the jail sentence imposed. The Sex Offender Review Board determined that the petitioner was to be classified as a level 2 or moderate risk to re-offend which in addition to the registration requirement, mandates that organizations in the community likely to encounter the petitioner be notified of his presence in the area. Upon receipt of the Board's decision of his level of community notification, the petitioner filed the within objection and a hearing was conducted in accordance with G.L. 11-37.1-15.
 Standard of Review
In any proceeding under GL 11-37.1 entitled Sexual Offender Registration and Community Notification Act, the State has the burden of presenting a prima facie case that justifies the proposed level and manner of notification.
The statute defines a prima facie case to mean 1) a validated risk assessment tool has been used to determine the risk of re-offense 2) reasonable means have been used to collect the information used in the validated assessment tool.
Upon presentation of a prima facie case, the Court shall affirm the determination of the level and nature of the community notification, unless it is persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is proposed to be accomplished is not in compliance with this chapter and the guidelines adopted pursuant to this chapter.
 Analysis
The State introduced the record of the Sex Offender Review Board which included the results of the Static-99, a valid risk assessment tool as well as additional information including the criminal record of the petitioner, police reports, institutional, probation/parole supervision and treatment information. They also introduced a supplemental report dated 6/28/05, stating additional factors, and/or characteristics of the petitioner which the Board considered in classifying the petitioner as a level 2 risk. The Board also considered the nature of the offense, namely an adult offender targeting a child victim, repetitive sexual aggressive behavior involving separate incidents with the same victim, a criminal record of violence and hostility including a firearm, a prior assault with intent to murder and assaults with a bat and pipe. These factors coupled with the Static-99 assessment, warranted a level 2 classification. The Court noted petitioner's DSM IV diagnosis, AXIS I, which indicated pedophilia, and considered that during the interview process, the petitioner minimized and rationalized his acts (i.e. he is only guilty of grabbing his niece's breasts in a fit of anger). The record of the Sex Offender Review Board notes while some pedophiles molest but once, most do so repeatedly. While research studies conclude there is no absolute way to accurately predict a sex offender to re-offend, factors can be identified that can increase or decrease the probability of future paraphilic behavior. While the petitioner has two factors that decrease his risk of re-offending, he has several factors that increase his risk, including multiple sexual activities with a child over a two year period and an anti-social personality disorder.
Overall the factors that increase his risk of re-offending outweigh factors that decrease his risk for paraphilic behavior in the near future.
After reviewing the Static-99 risk assessment tool, as well as all of the documentation and supplemental reports of the Sex Offender Review Board, the Court found that the State had presented a prima facie case.
The petitioner was afforded an opportunity to persuade the Court that the level of notification or the manner in which it is proposed was not in compliance with Rhode Island General Laws. To that end, he presented Mr. James Moody, (Moody) his treating psychologist. It was Mr. Moody's opinion that the petitioner "self regulates in that he does not have to be monitored frequently." He found that the petitioner was not anti-social and although he might possess a risk to the community, he is not an increased risk. However, Moody stated he was not saying petitioner should be classified as a level 1 risk. It was his opinion that petitioner could be reduced to a level 1 risk without presenting a risk to public safety.
In addition to Moody, petitioner introduced a letter (Defendant's Exhibit A) from Peter Loss, (Loss) Chairman of the Sex Offender Review Board and Director of the Sex Offender Treatment Program at the ACI. (Moody and Loss recused themselves from voting on petitioner's risk level).[1]
It was Loss' opinion that a risk level 2 determination was unnecessary to provide public safety. His opinion, however, is qualified by noting petitioner's obligation to attend ongoing sex offender treatment. In addition, ongoing specialized parole supervision and police notification were required to provide offender accountability and public safety. It should be noted that Loss did not appear and therefore was not subject to cross-examination. However, Loss' June, 2003 parole report stated that Mr. Perez hold no activity or employment where he would have contact with minors; that he not be alone with minors under any circumstances and that he engage in substance abuse treatment.
The report of Dr. Pedro Tactacum a psychiatrist referred to a number of factors that increased Mr. Perez's risk of re-offending including the following:
1. Perez's history of multiple sexual activities with a child for two years.
2. History of drug use which lower inhibitions and present substantial risk for acting on paraphilic urges.
3. Perez's antisocial personality disorder.
4. His verbalized limited insight and remorse over his misdeeds.
5. His persistent denial of some acts he committed.
It was Dr. Tactacum's opinion that "the factors that increased his risk of re-offending currently outweigh the factors that decrease his risk for paraphilic behavior in the near future".
In addition to these reports, the Static 99 Risk Assessment Tool[2] scored Mr. Perez a 2 which is low to moderate risk to re-offend.
Based on the foregoing the Court is not persuaded by a preponderance of the evidence that the level of notification or the manner in which it is proposed is not in compliance with Chapter 11-37-1 et seq. and, therefore, confirms the findings of the Sex Offender Review Board.
[1] Peter Loss and James Moody while recusing themselves on classification issues should not then submit testimony and/or letters on behalf of individuals. If they recuse for a valid reason, they should stay recused on all aspects of these procedures. It is the Court's opinion that either Mr. Loss or Mr. Moody, both extremely qualified individuals in the treatment of sex offenders, should not serve on the Sex Offender Review Board based on their extensive involvement as treatment providers to a large number of individuals who appear before the Sex Offender Review Board.
[2] The STATIC-99 was developed by R. Karl Hanson, Ph.D. of the Solicitor General Canada and David Thornton, Ph. D., at that time, of Her Majesty's Prison Service, England. The STATIC-99 was created by amalgamating two risk assessment instruments. The RRASOR (Rapid Risk Assessment of Sex Offender Recidivism), developed by Dr. Hanson, consists of four items: (1) having prior sex offences, (2) having a male victim, (3) having an unrelated victim, and (4) being between the ages of 18 and 25 years old. The items of the RRASOR were then combined with the items of the Structured Anchored Clinical Judgment — Minimum (SACJ-Min), an independently created risk assessment instrument written by Dr. Thornton (Grubin, 1998). The SACJ-Min consists of nine items: (1) having a current sex offense, (2) prior sex offenses, (3) a current conviction for non-sexual violence, (4) a prior conviction for non-sexual violence, (5) having 4 or more previous sentencing dates on the criminal record, (6) being single, (7) having non-contact sexual offenses, (8) having stranger victims, and (9) having male victims. These two instruments were merged to create the STATIC-99, a ten-item prediction scale.
The strengths of the STATIC-99 are that it uses risk factors that have been empirically shown to be associated with sexual recidivism and the STATIC-99 gives explicit rules for combining these factors into a total risk score. This instrument provides explicit probability estimates of sexual reconviction, is easily scored, and has been shown to be robustly predictive across several settings using a variety of samples. The weaknesses of the STATIC-99 are that it demonstrates only moderate predictive accuracy (ROC=.71) and that it does not include all the factors that might be included in a wide-ranging risk assessment (Doren, 2002). STATIC-99 Coding Rules revised 2003.